Filed 10/16/13  P. v. Carrillo CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C070985 |
| Plaintiff and Respondent, | (Super. Ct. No. 62106577) |
| v. | |
| RAYMOND CARRILLO, | |
| Defendant and Appellant. | |

In a tiny homeless camp in Auburn, the victim and the two witnesses wore ankle tracking devices as registered sex offenders.  There was a generator and gasoline at the camp to keep the sex offenders' tracking devices charged.  Defendant Raymond Carrillo, who lived in the camp but was not a sex offender, doused the victim's tent with gasoline and set it ablaze.  On appeal, following his conviction of attempted murder, arson, mayhem, and torture, defendant raises various evidentiary and instructional errors and contends his lawyer did not provide constitutionally adequate representation because he failed to pursue a voluntary intoxication defense.  We affirm.

1

# FACTS

There are only four players in the drama that unfolded on the night of May 24, 2011, in the homeless camp: defendant and his girlfriend, Terry Holmstrom, and the victim Timmy Swensen and his sidekick, David Ward. One of the regular inhabitants was gone that night and another slept through it. Besides their convictions for various sex crimes, Swensen, Ward, and Holmstrom had extensive criminal histories. All were subjected to vigorous cross-examination, not only to impeach them with their numerous convictions, but to expose the many inconsistencies in their first-hand accounts of what defendant did and said when lighting Swensen's tent on fire.

Ward and Holmstrom both testified that about two or three weeks before Swensen was burned, defendant held Holmstrom in a bear hug over the campfire. He had been drinking and they had been quarrelling. Her shoes melted. Otherwise she was not injured.

Defendant and Holmstrom were drinking by the campfire when Swensen and Ward returned from the "Welcome Center" about 6:30 p.m. and sat down with them near the fire. Neither Swensen nor Ward drank alcohol that night. Swensen testified that he believed defendant was drunk. Ward went into his tent about 7:00 p.m. Shortly thereafter, Holmstrom went into the tent she shared with defendant. Both Ward and Holmstrom heard defendant arguing with Swensen; according to Holmstrom, the arguing went on for 20 to 25 minutes. Eventually, Swensen went up the hill to the site of his tent.

Defendant shouted at Ward through his tent, " 'Fat boy get up.' " He told Ward that Swensen had called him a "fag," so he was going to "burn him, burn him up." Ward testified he tried to dissuade defendant without success. He first reported to the police that defendant was going to "light Swensen's tent on fire." He saw defendant pour some gasoline into a bucket and run up the hill. Again Ward pleaded, " 'Don't do this,' " but defendant responded, " 'You're either with me or you're against me.' "

When defendant reached Swensen's tent he shouted, " 'I'm going to get you, mother fucker.' " He threw gasoline on the tent, and because Swensen's legs were near the door to the tent, the gas covered his legs as well. Swensen heard a "click, click, click noise" that sounded like a cigarette lighter, then a "big whoosh" and the gasoline-soaked tent was suddenly on fire. There were some inconsistencies in what Ward and Holmstrom told the police during several different interrogations.

Swensen dove out of the tent with his legs on fire. Burning his hand in the process, he tried to put out the fire on his legs by rolling on the ground. When she heard a woman yell, " 'Fire. Fire,' " Holmstrom ran up the hill to help put out the fire. She heard defendant laughing. Swensen also testified that defendant was laughing and carrying on. Swensen told Holmstrom that defendant had set him on fire. Holmstrom told him that defendant was looking for a knife and he should flee for his safety. She and Ward put out the tent fire.

Swensen walked to the parole office but it was closed. He hid under a parked truck all night. He talked to a parole officer the next morning and ultimately ended up in the UC Davis Medical Center's burn unit. He suffered burns on his legs, his left foot, his right hand, and his face, requiring a week of hospitalization and treatment. He did not call the police because he was "in shock" and did not want law enforcement involved because of his prior convictions.

Defendant admitted to Holmstrom that he had thrown gasoline on Swensen and set him on fire because Swensen had called him a "faggot." Swensen admitted he was a smoker, but he was not smoking in his tent on May 24. He testified that defendant had tried to pick fights with him, and he speculated it was because he was a child molester. Swensen refused to fight. Defendant was carrying two workable lighters in his pants pockets when he was booked into the county jail.

A jury found defendant not guilty of aggravated mayhem and found not true the allegation that he had premeditated and deliberated the attempted murder of Swensen.

3

The jury found defendant guilty of attempted murder, arson, mayhem, torture, and arson of an inhabited structure. Defendant appeals.

## DISCUSSION

## I

## Uncharged Misconduct

Evidence Code section 1101, subdivision (a) prohibits the prosecution from introducing evidence of uncharged misconduct to demonstrate a criminal defendant has a propensity to engage in criminal conduct. Pursuant to this basic rule of exclusion, defendant contends the trial court abused its discretion by allowing the prosecutor to introduce evidence that he had intimidated his girlfriend by dangling her over the campfire a mere two or three weeks before Swensen's tent was set on fire. Because section 1101, subdivision (b) gives the trial court broad discretion to admit evidence to prove intent, the court properly exercised that discretion by finding sufficient similarity between the uncharged and charged conduct involving fires.

In response to defendant's objection to the admissibility of the evidence, the trial court admitted the evidence, explaining: "First, although the incidents are not exactly identical, there are similarities in that it involves an argument at a homeless camp in which the defendant allegedly used fire as a means of inflicting either pain or injury or attempting to scare people. They're not very far apart, just a few weeks. And I think it would shed some light [on] whether the defendant intended to use fire as a means of inflicting injury [in] the charged case."

Defendant points to the differences between the two incidents and contends the introduction of the evidence was far more prejudicial than probative. We disagree with his assessment of prejudice. The prosecutor did not dredge up an incident from defendant's distant past. Rather, he introduced two witnesses who gave brief accounts of how defendant, who was angry and had been drinking, held his girlfriend over the fire to

4

scare and intimidate her. The testimony was short and targeted. The incident itself happened within a month of the charged offense.

Defendant argues that his intent in holding his girlfriend over the fire was very different from the alleged specific intent he harbored in an attempt to kill, maim, and torture Swensen. Perhaps the incident was more accurately analyzed as indicative of a pattern or modus operandi than of a specific intent to kill, maim, or torture since he harbored none of those objectives toward his girlfriend.

Nevertheless, the trial court is accorded very broad discretion in determining the applicability of the Evidence Code section 1101, subdivision (b) exception to exclusion. We will not quibble over the precise terminology when the fact remains that the evidence was far more probative than prejudicial and the incidents bore sufficient similarity to merit the admission of the prior misconduct. In both incidents, defendant had been drinking and became agitated and angry. His response in both incidents was to use fire to intimidate and/or harm his victim. We cannot say the trial court abused its discretion by admitting the evidence that defendant turned to fire to subdue his girlfriend, just as he did two or three weeks later when he lit Swensen's tent on fire. Because we can find no abuse of discretion, defendant's constitutional rights to due process and a fair trial were not abridged.

Defendant further contends that the trial court's limiting instruction was fraught with error. In the language of CALCRIM No. 375, the court instructed the jury as follows: "The People presented evidence of other behavior by the defendant that was not charged in this case, specifically, attempting to put Ms. Holstrom [*sic*] in the campfire.

"You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the offenses. Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.

5

"If the People have not met this burden, you must disregard this evidence entirely.

"If you decide that the defendant committed the offenses, you may, but are not required to, consider that evidence for the limited purpose of deciding whether or not the defendant acted with the intent to commit attempted murder, mayhem, or torture.

"Do not consider this evidence for any other purpose except for the defendant's intent.

"If you conclude that the defendant committed the uncharged acts, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of the crimes charged. The People must still prove every charge beyond a reasonable doubt."

Defendant complains that the court characterized his conduct as attempting to put Holmstrom *in* the fire when, in his view, the evidence demonstrated that he held her over the fire. He insists that the swap of prepositions took a crucial factual issue away from the jury and led it to believe that the court found he was trying to put his girlfriend into the fire. We agree with the Attorney General that he makes much ado about nothing. The prior incident involving fire was admitted to demonstrate that defendant intended to misuse fire to harm or scare another when he was angry and had been drinking. Thus, its admissibility did not depend upon whether he held her over or in the fire, but whether he intended to harm the victim with fire.

Defendant also objects to the court's failure to specifically describe the intent necessary for attempted murder, torture, and mayhem within the limiting instruction. He failed to object at trial and for good reason. The intent for each crime was thoroughly explained in other instructions, and the jurors must consider the instructions as a whole. (*People v. Lee* (2011) 51 Cal.4th 620, 642 (*Lee*).)

Defendant concedes the trial court had the discretion to add the following language to the limiting instruction: "In evaluating this evidence, consider the similarity or lack of similarity between the uncharged . . . act[s] and the charged offense[s]."

6

(CALCRIM No. 375.)  He faults the court for failing to add the language to the instruction it provided the jury, even though he failed to request it.  The court does not have a sua sponte obligation to give or tailor a limiting instruction.  (*People v. Mendoza* (2011) 52 Cal.4th 1056, 1094.)  While the suggested language makes the jury's task explicit, the instruction as given implies the same process.  The jurors were given the opportunity to use the prior incident to infer intent if they found the prior incident was true by a preponderance of the evidence.  The strength of the inference depends on the similarity between the events.  If defendant wanted to insure that the evaluation of the similarity was made explicit, he should have asked for the additional language.  In the absence of a request, there was no error.

In a similar vein, defendant complains on appeal that the court did not admonish the jury that it should not conclude he had a " 'bad character or [was] disposed to commit crime' " based on a finding he had committed the uncharged act.  The court did direct the jury twice not to consider the evidence "for any other purpose except for [his] intent."  In the absence of a request for further amplification, the instruction was accurate and sufficient to restrict the jury's consideration of the evidence to prove intent and not to infer a predisposition to commit crime because of a flawed or bad character.

## II

## Voluntary Intoxication as a Defense

With the benefit of hindsight and a cold record, defendant blames his lawyer for forsaking a winning defense and doggedly pursuing a losing one.  He assures us that had his lawyer argued his voluntary intoxication could be considered in determining whether he possessed the requisite specific intent for each of the charges, it is reasonably probable the jury would have found him not guilty of attempted murder and torture.  We conclude he does not satisfy either prong of an ineffective assistance of counsel claim.

Defendant has the burden of proving his lawyer's performance was deficient, that is, that it fell below an objective standard of reasonableness under prevailing professional

7

norms and in the absence of the error it is reasonably probable he would not have been convicted.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674, 693]; *People v. Salcido* (2008) 44 Cal.4th 93, 170.)

Lawyers must make a wide array of strategic and tactical choices during trial, and reviewing courts defer to counsel's reasonable tactical decisions.  (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)  " 'In the usual case, where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions.  [Citations.]'  [Citation.]" (*People v. Jones* (2003) 29 Cal.4th 1229, 1254.)

It is true that defendant's defense that he did not set Swensen's tent on fire looked rather hopeless, given that there were three eyewitnesses and defendant did not testify.  But the record on appeal gives us no insight into his lawyer's tactical considerations, including what defendant told him.  Moreover, the level of defendant's intoxication is subject to some dispute in the record.  Both Walker and Holmstrom testified that defendant had been drinking but did not suggest how much he drank or what effect it had on him.  He was able to grab the gasoline can, fill a bucket, and run up the hill to Swensen's tent.  It was only Swensen who described him as drunk.

Defendant and/or his lawyer might have determined that he had a better chance of avoiding conviction of all the charges by discrediting the homeless witnesses' accounts of what happened rather than attempting to mitigate his responsibility based exclusively on the assessment of the victim that he was drunk.  This was a choice the lawyer, with the advice and consent of his client, was particularly well suited to make.  On appeal, we will not second-guess the tactical choice and cannot say that the representation defendant received fell below an objective standard of reasonableness under prevailing professional norms.

Nor can defendant demonstrate prejudice. Despite his argument to the contrary, the evidence against him was compelling. The victim and two witnesses may have been homeless sex offenders, but their testimony was consistent and credible. They all saw or heard defendant argue with Swensen and ultimately set his tent on fire. Because the evidence of intoxication was somewhat weak and inconsistent, we do not believe it was reasonably probable the jury would have reached a different result on the attempted murder and torture charges if the voluntary intoxication defense had been presented and argued.

Despite the decision not to present voluntary intoxication as a defense, the trial court instructed the jurors they could consider voluntary intoxication "in deciding whether the defendant acted with an intent to kill, or the defendant acted with deliberation and premeditation, or the defendant intended to permanently disable or disfigure the other person, or the defendant intended to cause cruel or extreme pain and suffering for the purpose of revenge, extortion, persuasion, or for any sadistic purpose." Defendant concedes that the court's instruction, as set forth in CALCRIM No. 625, is accurate as far as it goes. The error, he contends, is that the court did not couple it with CALCRIM No. 3426. Unlike CALCRIM No. 625, CALCRIM No. 3426 tells the jury it must find the required intent for each offense beyond a reasonable doubt. Again, he did not request the additional instruction or ask for clarification or amplification by the trial court.

As pointed out in response to defendant's other challenge to an instruction, not only did he fail to ask for the instruction he proffers on appeal, but he also ignores the basic principle that we must consider the instructions as a whole. (*Lee*, *supra*, 51 Cal.4th at p. 642.) Here the jury was told what the elements of each charged offense were, including the required mental states, and further that it had to find each element beyond a reasonable doubt in order to convict him. There is no doubt the jurors understood the

prosecution bore the burden of proving intent as to each charge beyond a reasonable doubt. There was no instructional error.

Since none of defendant's alleged errors have merit, we need not consider any cumulative effect.

## DISPOSITION

The judgment is affirmed.

        RAYE        , P. J.

We concur:

     BLEASE        , J.

     NICHOLSON     , J.